ILLINOIS MIGRANT COUNCIL and
Roy Villareal, Plaintiffs-Appellants,

v.

CAMPBELL SOUP COMPANY,
Defendant-Appellee.

No. 75–1094.

United States Court of Appeals,
Seventh Circuit.

June 26, 1975.

Robert S. Catz, Washington, D. C., Bruce L. Goldsmith, David Goldberger, Chicago, Ill., for plaintiffs-appellants.

Nina G. Stillman, Theophil C. Kammholz, John J. Cassidy, Jr., Chicago, Ill., for defendant-appellee.

Before TUTTLE,* CUMMINGS and STEVENS, Circuit Judges.

TUTTLE, Circuit Judge.

The Illinois Migrant Council (IMC) is a not-for-profit Illinois corporation, funded in part by the Federal Government,[1] which provides educational and health services to migrant and seasonal farmworkers. When its members attempted to speak to workers at the Campbell Soup Company's mushroom farm who reside at the Company's residential community of Prince Crossing, Illinois, to apprise them of the federal, state and IMC social services and other benefits available to them, the Company refused them access to the town.

The IMC and its regional director brought this suit to compel the defendant Campbell Soup Company to permit them access to the farmworkers living in Prince Crossing, as well as seeking damages for prior limitations on their exercise of claimed First and Fourteenth Amendment rights. The plaintiffs alleged federal jurisdiction based on (1) 42 U.S.C. § 1983[2] and its jurisdictional counterpart 28 U.S.C. § 1343; (2) general federal jurisdiction, 28 U.S.C. § 1331, with implied causes of action arising under either or both of the federal benefit statutes which it administers, the Economic Opportunity Act of 1964, and the Comprehensive Employment and Training Program Act, or an implied cause of action conferred by 18 U.S.C. § 245[3] which protects recipients of federal statutory benefits from interference by third parties; and (3) pendent jurisdiction based upon state claims.

The district court dismissed the plaintiffs' complaint finding the Company's action lacked the requisite state action for jurisdiction under § 1983, and that further no implied cause of action could be found under 18 U.S.C. § 245. The district court appears not to have considered the plaintiffs' claim of an implied cause of action arising out of federal benefits statutes which the IMC administers, or the allegation of pendent jurisdiction.

The plaintiffs appeal the dismissal of their complaint. We reverse. In our

---

* Honorable Elbert P. Tuttle, United States Circuit Judge, Fifth Circuit, sitting by designation.

1. The Council receives Federal funds for the operation of educational and vocational training programs for farmworkers authorized by the Economic Opportunity Act, 42 U.S.C. § 2701 *et seq.* and the Comprehensive Employment and Training Programs Act, 29 U.S.C. § 801 *et seq.*

2. 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute . . . of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceedings for redress."

3. 18 U.S.C. § 245 protects recipients of federal statutory benefits from interference by third parties, making such interference a criminal offense.

view, the plaintiffs' complaint stated a claim under 42 U.S.C. § 1983, and we accordingly need not consider the alternative grounds for federal jurisdiction argued by the plaintiffs.

The plaintiffs alleged in their complaint that the defendant Company owned and operated a "residential community" located two and one-half miles from the nearest neighboring town. The complaint alleged that the community, Prince Crossing, was approximately one mile from a mushroom farm also owned and operated by the defendant Company at which the residents worked. The complaint alleged that:

"[T]his residential community houses approximately 150 persons of Mexican descent whose primary language is Spanish. Many of these persons are illiterate. All are migrants, ex-migrants, seasonal farmworkers or other farmworkers employed year-round on defendant's mushroom farm, or are members of families of persons employed at the farm. The community consists of duplex homes, a large, multiple dwelling residential unit, a store, a cafeteria and recreation center."

The complaint alleged that access to the residential community was by a private road owned by the defendant, and that the defendant used state trespass laws to limit access to the town.

The plaintiffs contend that these allegations constituted a sufficient claim that Prince Crossing is a "company town" within the meaning of *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) to warrant a finding of the requisite state action under § 1983. The district court found that the failure of the plaintiffs to allege that the Company maintained such municipal services as police protection, sewage disposal, postal and shopping facilities impliedly constituted an allegation that the Company did not maintain such services, and that accordingly the community of Prince Crossing did not possess such public characteristics as to constitute state action for purposes of § 1983 and the Fourteenth Amendment.

In *Marsh v. Alabama* the Supreme Court held that "the town of Chickasaw does not function differently from any other town." 326 U.S. at 508, 66 S.Ct. at 279. The Court found that the company town possessed "all the characteristics of any other American town." 326 U.S. at 502, 66 S.Ct. at 277. The town of Chickasaw was large, Prince Crossing is small, but we think size alone is not the important criterion by which to evaluate whether the town has sufficient public residential characteristics as to constitute state action. Rather the question is whether Prince Crossing serves as a functional equivalent of a municipality for its residents. Taking the allegations contained in the complaint as true, we believe that defendant's company town comes under the rule of *Marsh v. Alabama.*

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Certainly "[p]leadings are to be liberally construed." 2A Moore's Federal Practice, ¶ 12.08 at 2274. We are thus obliged in reviewing a dismissal of a complaint to take the facts alleged as true, *Gardner v. Toilet Goods Association,* 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967), but further we must also accept the reasonable inferences from these facts as true as well. *Murray v. City of Milford,* 380 F.2d 468 (2d Cir. 1967); *RKO–Stanley Warner Theatres, Inc. v. Mellon National Bank & Trust Co.,* 436 F.2d 1297, 1300, n. 6 (3rd Cir. 1970).

 The district court read the plaintiffs' complaint as narrowly as possible—and drew every inference adverse to the plaintiffs' claim. The district court had a duty to construe all allegations of the complaint in the light most favorable to the plaintiffs, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683,

40 L.Ed.2d 90 (1974), and this it failed to do. The plaintiffs' complaint alleged that the Company operated a residential community for 150 persons—providing them with the basic facilities needed, including a work place, residences, a store, a cafeteria and a recreational building. The complaint further alleged that the Company enforced a no-trespass policy, from which it would be quite reasonable to infer that the Company had some means of enforcing its no-trespass rules. It would further seem reasonable to infer that a community of 150 persons, located some miles from any other town, must have some means of protecting itself from crime and fire, and must have some means of disposing of its sewage. In sum, in our view, the plaintiffs' complaint alleged sufficient facts upon which it could be concluded that the Campbell Soup Company's town of Prince Crossing was a company town within the meaning of *Marsh v. Alabama,* and accordingly when the defendant Company acted, it did so under color of state law.

The district court appears to have also made the legal determination that the Company's attempt to prevent the public from entering the town necessarily meant that the town retained its wholly private character. Relying on *Central Hardware v. NLRB,* 407 U.S. 539, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972) and *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) the district court concluded that the defendant's attempt to limit public access to Prince Crossing meant the town lacked the functional attributes of private property devoted to public use. In *Central Hardware* the Supreme Court distinguished *Marsh v. Alabama,* noting that *Marsh* involved a "company town" which the Court stated was "an economic anachronism rarely encountered today," 407 U.S. at 545, 92 S.Ct. at 2242. The Court declined to apply the rationale of *Marsh* to facilities such as parking lots and shopping centers, private property which to the extent it was open to the public,

was open for limited designated purposes.

The plaintiffs in *Lloyd Corp. v. Tanner* attempted to liken the shopping center in which they had been picketing to a company town, arguing that because it was "open to the public" and thus in some sense serving the same purposes as a "business district" of a municipality, it was thus converted into property "dedicated to certain types of public use." 407 U.S. at 568–69, 92 S.Ct. at 2229. Arguing from this, the plaintiffs contended that "all members of the public, whether invited as customers or not, have the same right of free speech as they would have on the similar public facilities in the streets of a city or town." *Id.* The Supreme Court rejected this argument entirely:

> "The argument reaches too far. The Constitution by no means requires such an attenuated doctrine of dedication of private property to public use. The closest decision in theory, *Marsh v. Alabama, supra,* involved the assumption by a private enterprise of all of the attributes of a state-created municipality and the exercise by that enterprise of semi-official municipal functions as a delegate of the State. In fact, the owner of the company town was performing the full spectrum of municipal powers and stood in the shoes of the State. In the instant case there is no comparable assumption of exercise of municipal functions or power."

*Lloyd Corp. v. Tanner, supra.* Briefly stated, property otherwise private, upon which the public is invited for certain limited and designated purposes does not come under the rule of *Marsh v. Alabama,* for such property cannot be thought of as being a "company town." Private commercial property, such as a shopping center, is not a residential community; there is thus no resemblance to a "company town."

The Court in *Lloyd Corp. v. Tanner* noted that *Amalgamated Food Employees Union v. Logan Valley Plaza,* 391

**396**

U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968) had extended *Marsh* to a shopping center—but was careful to limit *Logan Valley* to instances where the picketing "was directly related to its purpose to the use to which the shopping center property was put," 391 U.S. at 320, n. 9, 88 S.Ct. at 1609, and where "no other reasonable opportunities for the pickets to convey their message to their intended audience were available." 407 U.S. at 563, 92 S.Ct. at 2226. The defendant would have us apply these two tests to the case at hand—but to do so would be to misperceive the distinction the Supreme Court drew between classic "company towns" and such "modern economic phenomenon," *Central Hardware*, 407 U.S. at 546, 92 S.Ct. 2238, as a shopping center. If Prince Crossing has the characteristics of a municipality and serves as a functional equivalent of a normal town to its inhabitants, it is not necessary to attempt to define the use to which the public is invited to put the town to, or to evaluate alternative means of communication.

The district court applied these two tests and determined that the defendant's offer to post written notices [4] constituted a sufficient alternative means of communication to make entry into the town unnecessary. The district court found that the defendant's refusal to permit outsiders to enter Prince Crossing was reasonable after it balanced the First Amendment claims of the plaintiffs against the property rights of the defendant. On this alternative ground the district court determined that the plaintiffs had failed to state a claim for which relief could be granted. This was error.

 A state or municipality may have the right to "regulate the use of city streets and other facilities to assure the safety and convenience of the people in their use and the concomitant right of the people of free speech and assembly." *Cox v. Louisiana,* 379 U.S. 536, 554, 85

S.Ct. 453, 464, 13 L.Ed.2d 471 (1965); *Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Thus individuals asserting First Amendment rights may not choose to ignore traffic signals, or refuse to comply with reasonable regulations governing parade permits or the like. Such regulations must be nondiscriminatory, and cannot "unnecessarily burden or restrict constitutionally protected activity." *Dunn v. Blumstein,* 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972). Municipal regulations affecting constitutional rights must be drawn with "precision," *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) and must be "tailored," *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) to accomplish their legitimate objectives. A city may not choose the most restrictive method of regulation if other, "less drastic means," *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960) are available. Clearly the defendant's absolute refusal to permit the IMC to enter Prince Crossing fails to comply with these stringent requirements.

As we have said, the fact that there may be alternative means of communication is irrelevant if the community is a company town; if Prince Crossing is the functional equivalent of a municipality, it may not restrict the plaintiffs' exercise of their First Amendment rights save for such reasonable and limited regulations permitted any other town. The plaintiffs' First Amendment rights cannot be balanced away in the manner suggested by the district court. If any limitations are to be imposed on the plaintiffs' right of access to Prince Crossing, such restrictions must be narrowly drawn and proven by the defendant to be both reasonable and necessary.

 In summary, if under *Marsh v. Alabama* the defendant owns and operates a community with the functional

---

4. The court apparently did not consider the fact that the IMC complaint alleged that many of the town's residents were illiterate.

attributes of a municipality, it is not meaningful that the company has attempted to limit public access to the town; it acquires its municipal character due to the fact it is used as a permanent town by its residents, the defendant's employees.

"While general access to the public, standing alone, may in certain cases require that the owner allow the exercise of free speech on those parts of his property which are dedicated to public use, *see Flower v. United States,* 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1971), the mere fact that the owner has sequestered its employees from general social intercourse with mankind can afford it no immunity from the prohibitions of the First Amendment. After all, many state-operated enterprises such as municipally-owned beaches and other recreational facilities are open only to town residents, but are nonetheless subject to the First Amendment's ambit. While openness to the public may prohibit the owner from excluding 'those members of the public wishing to exercise their First Amendment rights on the premises in a manner and for a purpose generally consonant with the use to which the property is actually put,' *Logan Valley Plaza,* 391 U.S., at 319–320, 88 S.Ct., at 1608 . . . mere enclosure of a 'company town' does not make it less of a town. By using its property as a round-the-clock habitat for its employees, [the company] has forfeited the broad right which the owner of sawgrass and marshes alone would have to enforce strictly a 'No Trespassers' policy. Having located the functional equivalent of a thousand-resident municipality in the midst of its property, the company must accommodate its property rights to the extent necessary to allow the free flow of ideas and information between the plaintiffs and the migrants."

*Petersen v. Talisman Sugar Corp.,* 478 F.2d 73, 83 (5th Cir. 1973). *See also, NLRB v. Lake Superior Lumber Corp.,*

167 F.2d 147 (6th Cir. 1948); *Velez v. Amenta,* 370 F.Supp. 1250 (D.Conn.1974); *Franceschina v. Morgan,* 346 F.Supp. 833 (S.D.Ind.1973); *Folgueras v. Hassle,* 331 F.Supp. 615 (W.D.Mich.1971).

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.