ILLINOIS MIGRANT COUNCIL, etc.,
et al., Plaintiffs,

v.

CAMPBELL SOUP COMPANY,
Defendant.

No. 74 C 2619.

United States District Court,
N. D. Illinois, E. D.

Sept. 19, 1977.

Bruce Goldsmith, F. Thomas Hecht, Legal Assistance Foundation, Chicago, Ill., for plaintiffs.

T. C. Kammholz, Chicago, Ill., for defendant.

Memorandum

## I.

LEIGHTON, District Judge.

This litigation is the outgrowth of a controversy between an Illinois not-for-profit corporation and a corporate employer concerning access to a community owned by the employer and in which some of its employees reside. The suit seeks damages, declaratory judgment, and injunctive relief because the employer refuses to permit access to the community by agents of the non-profit corporation who can tell employees about certain programs which inure to their benefit under the provisions of the Economic Opportunity Act of 1964, 42 U.S.C. §§ 2701, *et seq.*, and the Comprehensive Employment and Training Act, 29 U.S.C. §§ 801, *et seq.* It is alleged that plaintiffs have an implied right of action against the employer under 18 U.S.C. § 245; federal jurisdiction is invoked under 28 U.S.C. §§ 1331, 1343 (3)–(4); relief is sought pursuant to 28 U.S.C. §§ 2201, 2202; claims are asserted under 42 U.S.C. § 1983 and 18 U.S.C. § 245. In addition, one theory of recovery is said to be within the power of this court under the doctrine of pendent jurisdiction. The amount in controversy exceeds $10,000, exclusive of interests and costs.

Plaintiffs' suit was dismissed on a ruling that a claim for relief under 42 U.S.C. § 1983 had not been stated, and an implied cause of action under 18 U.S.C. § 245 had not been shown. On appeal, this ruling was reversed, with the court of appeals holding that plaintiffs' complaint stated a claim under 42 U.S.C. § 1983 for which relief can be granted. The cause is before this court on cross motions for summary judgment.[1] From an examination of the pleadings, affidavits, depositions, answers to interrogatories, and memoranda of the parties, the following appear to be the undisputable facts.

1. Earlier in these proceedings, after considering the briefs of the parties, this court announced its ruling and later entered a judgment order.

## II.

Plaintiff, Illinois Migrant Council, is a not-for-profit corporation offering adult basic education programs to upgrade language skills, vocational training, and family counseling services for migrant and seasonal agricultural workers. Ray Villarreal, the other plaintiff, is its regional director. The Council assists participants in its programs by providing legal services and transportation to medical clinics and institutions that administer public assistance and furnish day care services. It is federally funded pursuant to the Economic Opportunity Act of 1964, 42 U.S.C. §§ 2701, *et seq.*, and the Comprehensive Employment and Training Act, 29 U.S.C. §§ 801, *et seq.* Council functions are intended to further the congressional mandate of 42 U.S.C. § 2861 which is ". . . to assist migrant and seasonal farmworkers and their families to improve their living conditions and develop skills necessary for a productive and self-sufficient life in an increasingly complex and technological society."

Some of the areas served by the Council have high concentrations of Spanish-speaking agricultural workers. However, eligibility for programs can turn on factors other than the language spoken; factors such as the working status of an individual, income levels and source of income. The Council uses farm characteristic survey forms in conjunction with personal interviews to familiarize itself with the social needs of a given community and to ascertain which individuals are eligible for Council programs. Information elicited in these interviews is compiled and stored; some statistics are forwarded to the United States Department of Labor, and other funding sources in order to substantiate areas which have been targeted for Council services. Personal interviews are also conducted to recruit workers into Council programs, and inform them of the process by which itinerant agricultural workers are apprised of opportunities to upgrade language skills and increase job opportunities.

This Memorandum is filed to explicate the court's conclusions in accordance with Rule 52(a), Fed.R.Civ.P.

Defendant Campbell Soup Company is the owner of an agricultural community known as the Prince Crossing Farm in DuPage County, Illinois. The community is approximately 201 acres in size, a mushroom growing operation, and provides housing for those company employees and family members who choose to live there. It is abutted by two roads: a private one, Prince Crossing, which leads directly into the community and on which is posted a sign limiting access to those with permission from the company; and a public one, Hawthorne Lane. The community houses about one hundred Spanish-speaking employees who perform skilled and unskilled labor for the company. The farm community center is approximately one mile from the city of West Chicago, Illinois, a predominately blue-collar suburb whose population includes approximately 17% that speak Spanish. West Chicago has civic associations and church programs for Spanish-speaking people, it has stores and shops. These are available to and are used by residents of Prince Crossing Farm.

Prince Crossing has a multi-purpose building reserved for the company's employees. It has a cafeteria, and a live-in dormitory area for those who work at night. Family housing units consist of a kitchen, living and dining room, bedrooms, and a bathroom with shower. There are dormitory-type living quarters for single employees, a multi-purpose unit consisting of a cafeteria and recreation room, and a building housing a company store selling its products. This building has a restroom and a personnel office which serves the mushroom farm. There is a play area for all employees; and, south of the family living units, one is reserved for swings, a jungle gym, and a slide used by youngsters. In addition, there are plots for employees who wish to engage in gardening.

In terms of services and supplies, the company provides bed and bedding for the single dormitory units; and for all employees, it furnishes heat, contracts with outside vendors to supply laundry facilities, and supplies water from a company-owned well. It furnishes garbage disposal through a vendor of such services, has agreed to provide transportation for employees in need, provides sewage waste disposal, and supplies elementary modes of fire protection in the form of fire hydrants, hoses and extinguishers, although Prince Crossing is located within the West Chicago Fire Protection District. A cafeteria is operated seven days a week by a commissary service under contract with the company, furnishing farm employees with three meals a day, financed through a wage deduction plan. Electric service and gas for stove units are provided by the company through contract. In addition to the cafeteria, the company operates a store, open on a limited basis, which offers canned food items to community residents. It has arranged with local doctors and hospitals for specified types of medical care, and regulates the conduct of its employees through a disciplinary code.

It is the company's policy that access to Prince Crossing Farm be limited to persons permitted by the company to enter the community. However, relatives of Prince Crossing residents are permitted in the community, although visitation hours in portions of the farm are subject to time limitations. Door-to-door salesmen cannot go into Prince Crossing, and random religious solicitation is not allowed. Deliverymen and repairmen having business there can enter the farm. The company policy has the effect of prohibiting political canvassing, political campaigning, communications concerning day care programs, adult basic education, medical services, and dissemination of information by federal government employees about vocational training. Agents and employees of the Illinois Migrant Council have been denied access to the community on at least two occasions. These denials were based on the company's policy against allowing groups or organizations from outside Prince Crossing to solicit on the farm. Authorized officials of the company have served notice that they will enforce their employer's policy by having plaintiffs and their agents arrested.

### III.

Although the parties disagree about the conclusion to be reached in this case, they

agree that there is no genuine issue between them as to any material fact. The court concurs in this aggreement. Plaintiffs contend that Prince Crossing Farm is a "company town" or the functional equivalent of a municipality. They point to the farm's organization, its composition, its service to residents, its use by others; and from these characteristics, they argue that the community has been dedicated by defendant to public use within the meaning of the Supreme Court decision in *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) and the decision of the Seventh Circuit Court of Appeals in this case, *Illinois Migrant Council v. Campbell Soup Co.*, 519 F.2d 391 (7th Cir. 1975). This dedication, plaintiffs insist, even if the community is not operated by defendant as a company town, gives plaintiffs first amendment rights of access to Prince Crossing so they can communicate with residents there, although these residents are defendant's employees. Plaintiffs argue that in addition to these constitutional freedoms, they have statutory rights to enter Prince Crossing, under reasonable limitations, for the purpose of informing defendant's agricultural workers about various federal programs which are available for their educational and vocational improvement. In this respect, plaintiffs say, and it is not disputed, that they administer federally funded programs which further a congressional mandate that ". . . migrant and seasonal farmworkers and their families [be assisted] to improve their living conditions and develop skills necessary for a productive and self-sufficient life . . . ." Plaintiffs contend that when the needs of communication of an agency administering governmental programs conflict with the desires, or even the rights, of private property owners, the latter must give way to the former. For these reasons, they conclude that on the issue whether Prince Crossing Farm is a "company town" or the functional equivalent of a municipality, they are entitled to summary judgment as a matter of law; and on such a judgment, they are entitled to all the relief prayed for in their complaint, including an injunction restraining defendant and its agents from interfering with plaintiffs' access to Prince Crossing Farm.

■ Defendant, pressing its motion for summary judgment, argues that Prince Crossing is not a company town or the functional equivalent of a municipality. Accordingly, it contends that plaintiffs do not have any constitutional right to enter defendant's private property. Examining the criteria for a company town set forth in *Marsh v. Alabama*, defendant insists that its farm does not meet them; and that the uncontested facts of this case do not support a constitutional right of plaintiffs to access to the farm and its residents, or access under any other legal theory. Defendant states that plaintiffs' allegations of company threats to farm residents are unfounded and inflammatory; and on the facts shown, Prince Crossing residents are not isolated; but are, instead, fully integrated members of the West Chicago community. For these reasons, defendant contends that summary judgment in its favor and against plaintiffs should be entered by this court. It is well settled that where both parties move for summary judgment, conceding that there are no genuine issues as to material facts, and the court finds none, the case is to be decided as a matter of law. *Carrothers v. Stanolind Oil and Gas Co.*, 134 F.Supp. 191 (N.D.Tex.1955); *United States v. Allen Tool Corp.*, 112 F.Supp. 882 (N.D.N.Y.1953); compare *Manetas v. International Petroleum Carriers, Inc.*, 541 F.2d 408 (3d Cir. 1976).

### IV.

■ A company town is a community organized on private property by a private enterprise and so used that it becomes the functional equivalent of a municipality. When a company town exists, infringement of first amendment rights by those who administer town functions constitute state action. In determining whether a community is a company town, and whether its functions constitute state action, size alone is not the important criteria. *Illinois Migrant Council v. Campbell Soup Company*,

519 F.2d 391, 394 (7th Cir. 1975). Nor is it essential, as defendant argues in this case, that a community have all of the attributes of a state-created municipality before it can be called a company town.

■ *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) ". . . involved the assumption by a private enterprise of all of the attributes of a state-created municipality and the exercise by that enterprise of semi-official municipal functions as a delegate of the State. In effect, the owner of the company town was performing the full spectrum of municipal powers and stood in the shoes of the State." *Lloyd Corp. v. Tanner*, 407 U.S. 551, 569, 92 S.Ct. 2219, 2229, 33 L.Ed.2d 131 (1972) (footnote omitted). However, since *Marsh* was decided, courts in different parts of the country have found the existence of a company town, although, from case to case, municipal attributes have varied. See *Petersen v. Talisman Sugar Corp.*, 478 F.2d 73 (5th Cir. 1973); *Velez v. Amenta*, 370 F.Supp. 1250 (D.Conn.1974); *Franceschina v. Morgan*, 346 F.Supp. 833 (S.D.Ind.1972); *Folgueras v. Hassle*, 331 F.Supp. 615 (W.D. Mich.1971). And more recently, in *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 437 F.Supp. 60 (S.D.N.Y.1977), the court found state action sufficient to protect assertions of first amendment rights because it concluded that a private farm had "the hallmarks of a 'company town'". Consistent with these cases, the Third Circuit, in *Asociacion de Trabajadores, etc. v. Green Giant Co.*, 518 F.2d 130 (3d Cir. 1975), observed that ". . . [w]here the private enterprise has some, but fewer than all, of the attributes normally associated with a community, a composite set of facts, tested under the formula of *Lloyd*, might warrant an accommodation of property rights so as to allow a circumscribed access to the property and the exercise of freedom of expression". 518 F.2d 130 at 137. This is so because in weighing the rights of an owner against assertions of first amendment freedoms, the question is always whether the private property is so dedicated as a community that it is the functional equivalent of a municipality for its residents. *Illinois*

*Migrant Council v. Campbell Soup Company*, 519 F.2d 391, 394 (7th Cir. 1975). This question is answered by bearing in mind that "[t]he more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Marsh v. State of Alabama*, 326 U.S. 501, 506, 66 S.Ct. 276, 278, 90 L.Ed. 265 (1946).

In this case, when the court of appeals reversed dismissal of this suit, it said:

> The plaintiffs' complaint alleged that the Company operated a residential community for 150 persons—providing them with the basic facilities needed, including a work place, residences, a store, a cafeteria and a recreational building. The complaint further alleged that the Company enforced a no-trespass policy, from which it would be quite reasonable to infer that the Company had some means of enforcing its no-trespass rules. It would further seem reasonable to infer that a community of 150 persons, located some miles from any other town, must have some means of protecting itself from crime and fire, and must have some means of disposing of its sewage. In sum, in our view, the plaintiffs' complaint alleged sufficient facts upon which it could be concluded that the Campbell Soup Company's town of Prince Crossing was a company town within the meaning of *Marsh v. Alabama*, and accordingly when the defendant Company acted, it did so under color of state law. 519 F.2d 391 at 395.

■ After this statement was made, the cause was remanded, and the parties engaged in discovery which revealed facts now uncontested in these cross motions for summary judgment. It appears without question that the company operates a residential community known as Prince Crossing Farm in which about 100 persons reside; it provides the residents with a place to work, houses in which to live, a store from which they purchase company products, a cafeteria, and a recreational area within a

multi-use building. The company has a no-trespass policy within the community which it enforces by agents who check operator licenses of those who come upon the premises, and the immigration status of farm residents. The community at its center is at least a mile away from the nearest town. The company provides a rudimentary system of fire protection through fire extinguishers, a central fire hydrant, and water hose. It provides residents with sewage disposal; and it furnishes water from a company owned well. Prince Crossing has outside lighting, a central heating plant, an athletic field, recreational facilities, electricity, garbage collection, snow removal, and the common amenities found in any municipality. More important is the fact that the company enforces a disciplinary code in Prince Crossing, and metes out penalties through a system it administers. From these uncontested facts, there can be only one conclusion: that Prince Crossing is a company town within the meaning of *Marsh v. Alabama*; and accordingly, when defendant acted through its agents to prevent plaintiffs from exercising their first amendment freedoms within the farm, it did so under color of state law. *Ill. Migrant Council v. Campbell Soup Co.*, 519 F.2d 391 (7th Cir. 1975).

For these reasons, plaintiffs' motion for summary judgment is granted; defendant's is denied. The judgment order entered in this cause will declare the rights of the parties, enjoin the conduct about which plaintiffs complain, award actual compensatory damages, but deny punitive damages. As to the details of the injunction order to assure plaintiffs access to Prince Crossing Farm, the rights of the parties having been declared, this court will rely on their good judgment, and on the sense of professional responsibility possessed by the lawyers in the case. Bearing in mind the fact that plaintiffs act as governmental agents, and defendant is a large and influential American corporation, there is no reason why this controversy should require further judicial attention. However, if the court's reliance turns out to be misplaced, and post-judgment enforcement proceedings are neces-sary, rules and regulations will be promulgated for the parties. See *Velez v. Amenta*, 370 F.Supp. 1250 (D.Conn.1974).

So ordered.