**ILLINOIS MIGRANT COUNCIL and Roy Villarreal, Plaintiffs-Appellees,**

v.

**CAMPBELL SOUP COMPANY, Defendant-Appellant.**

No. 77–1804.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1977.

Decided April 12, 1978.

Rehearing and Rehearing En Banc Denied June 15, 1978.

John J. Cassidy, Jr., Nina G. Stillman, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant-appellant.

F. Thomas Hecht, Bruce L. Goldsmith, Ill. Migrant Legal Asst., Chicago, Ill., for plaintiffs-appellees.

Before PELL, SPRECHER and WOOD, Circuit Judges.

PELL, Circuit Judge.

The Illinois Migrant Council (IMC)[1], after being denied access to the Prince Crossing Farm, which is private property owned by the Campbell Soup Company (Company), filed a complaint in the district court seeking declaratory and injunctive relief and punitive and actual damages. IMC sought to enter the housing area of the Company's property to communicate with residents regarding educational, health, and vocational programs. The district court dismissed IMC's complaint for failure to state a claim upon which relief could be granted, and IMC appealed. This court reversed stating that IMC stated a claim with respect to the First and Fourteenth Amendment violations. The court construing the alleged facts in the light most favorable to the plaintiffs and drawing all reasonable inferences therefrom, concluded that IMC should be permitted to attempt to prove that the Prince Crossing Farm was a company town within the meaning of *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), thus establishing the requisite state action on which to base a § 1983 claim for violation of First and Fourteenth Amendment rights. *Illinois Migrant Council v. Campbell Soup Company*, 519 F.2d 391 (7th Cir. 1975).

On remand, both parties filed motions for summary judgment. The district court granted IMC's motion and entered a judgment permanently enjoining the Company from interfering with IMC's ingress to and egress from the residential area of Prince Crossing Farm and IMC's communications with residents of the farm. The district court held that Prince Crossing was a company town within the meaning of *Marsh v. Alabama* and thus that the Company's actions preventing IMC's access to the Prince Crossing residential area constituted state action. The Company appealed.

Generally, the constitutional guarantee of free speech protects only against abridgment by government. *See Columbia*

---

1. IMC is a not-for-profit corporation whose purpose is to provide services to migrant and seasonal farmworkers living or traveling in the state of Illinois.

Broadcasting System, Inc. v. Democratic National Committee, 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973). Accordingly, one must find some sort of state action to establish a violation of First Amendment free speech rights. In *Marsh v. Alabama*, however, the Supreme Court fashioned an exception to this state action analysis, or at least devised a legal fiction to fit within it. That case involved a Jehovah's Witness who was prohibited from distributing literature on a sidewalk in a so-called company town which was owned by the Gulf Shipbuilding Corporation.[2] The Court noted that the town, although wholly owned by the corporation, functioned like any other municipality, and held that First and Fourteenth Amendment guarantees extended onto the private property of this company town. Thus, whenever private property includes all the components of a town, it becomes sufficiently state-like to fulfill the state-action requirement for invoking First Amendment rights.

Determining the threshold of components necessary to constitute a company town under *Marsh* requires a detailed factual analysis. Before doing so, however, for legal background purposes, we will look at subsequent Supreme Court opinions which addressed the *Marsh* doctrine, although these developments do not alter the doctrine as applied in the case before us.

In *Food Employees v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), picketers were protesting employment practices of a store within a shopping center. The store and shopping center obtained an injunction prohibiting the picketing as a trespass. The Supreme Court reversed on the theory that the shopping center was the "functional equivalent of the business district . . . in *Marsh*." *Id.* at 318, 88 S.Ct. at 1608. Justice Black, who wrote the majority opinion

in *Marsh*, wrote one of the three dissents in *Logan Valley* and expressed his view that *Marsh* should not apply to a shopping center. He was of the opinion that *Marsh* should be limited to situations in which the private property "had all the attributes of a town and was exactly like any other town . . . ." *Id.* at 331, 88 S.Ct. at 1615.

Four years later in *Lloyd Corp. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), the Court again addressed the application of *Marsh* to a shopping center and rejected such an application. It distinguished *Logan Valley* on the ground that the speech in *Logan Valley* was directly related to the use to which the shopping center property was being put, whereas in *Lloyd* the distribution of anti-war handbills was unrelated to the shopping center's operations.

This distinction, as well as the vitality of *Logan Valley*, was interred by the Court's recent decision in *Hudgens v. N. L. R. B.*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). The Court reasoned that if a shopping center was the functional equivalent of a town, thus satisfying the *Marsh* doctrine, then First Amendment rights cannot depend on the content of the speech, that is whether or not the speech is related to the property. Having rejected the *Lloyd* distinction, the Court returned to a strict *Marsh* analysis and held that a shopping center was not the functional equivalent of a town, ergo no violation of freedom of speech.

It is the *Marsh* doctrine, unscathed by *Logan Valley* and *Lloyd*, and reaffirmed by *Hudgens*, that we now will apply.

Before examining in detail the facts of the instant case to determine whether Prince Crossing is a company town, it is instructive to examine some of the language in *Marsh*. The Court described the company town as follows:

---

**2.** The plaintiff in *Marsh* was convicted of criminal trespass. Although some commentators have argued that the use of a state trespass statute provided the requisite state action on which to base a § 1983 claim, *see* Berle, *Constitutional Limitations on Corporate Activity— Protection of Personal Rights from Invasion of* *Economic Power*, 100 U.Pa.L.Rev. 933 (1952), this interpretation has not been generally accepted. *See Schauer, Hudgens v. N. L. R. B. and the Problem of State Action in First Amendment Adjudication*, 61 Minn.L.Rev. 433 (1977).

[I]t has all the characteristics of any other American town. The property consists of residential buildings, streets, a system of sewers, a sewage disposal plant and a 'business block' on which business places are situated. A deputy of the Mobile County Sheriff paid by the company, serves as the town's policeman. Merchants and service establishments have rented the stores and business places on the business block and the United States uses one of the places as a post office from which six carriers deliver mail to the people of Chickasaw and the adjacent area. The town and the surrounding neighborhood, which can not be distinguished from the Gulf property by anyone not familiar with the property lines, are thickly settled, and according to all indications the residents use the business block as their regular shopping center. To do so, they now, as they have for many years, make use of a company-owned paved street and sidewalk located alongside the store fronts in order to enter and leave the stores and the post office. . . .

In short the town and its shopping district are accessible to and freely used by the public in general and there is nothing to distinguish them from any other town and shopping center except the fact that the title to the property belongs to a private corporation.

326 U.S. at 502–03, 66 S.Ct. at 277. It is against this description that we now juxtapose the essentially undisputed facts concerning Prince Crossing.

▮▮▮ Prince Crossing is a 201 acre farm located in an unincorporated area of DuPage County. The residential area of the farm is approximately ¾ of a mile from the neighboring municipality of West Chicago. Of the approximately 140 employees of the farm, 88 reside on the farm. Others live in West Chicago or elsewhere, and the Company has no requirement that employees live on the farm. The residential area of the farm includes sixteen family apartments in four buildings and four dormitory structures housing single employees or employees whose families do not reside in the West

Chicago area. The housing area also includes a multi-purpose building which is approximately 95 feet long, 34 feet wide, and is segmented into a kitchen, dining area, and recreation room.

Fire protection at the farm is provided by the West Chicago Fire Protection District. IMC argues that Company-provided fire extinguishers and a hydrant on the premises provide fire protection. Affidavits of residents, however, indicate that if a fire occurred, they would call the West Chicago Fire Department. The Company also instructed residents not to attempt to fight fires themselves, but, instead, to call the fire department. The hydrant and hose on the premises are for the use of the fire department.

Police protection at the farm is provided by the DuPage County Sheriff's Office. IMC argues that the Company's disciplinary code, as enforced by the resident farm manager and other supervisors, the Company's setting of speed limits on the farm, and the Company's checking of residents' drivers licenses and immigration status constituted the exercise of all routinely necessary police functions. We disagree. Unlike police protection in any small town, the Company's disciplinary code applies only to Company employees and thus does not apply to the conduct of approximately 40 percent of the residents who are not employees. Furthermore, the sanctions for conduct violative of the code are work-related such as verbal warnings, two-day suspensions from work, or dismissal from employment. The Company has no authority, and indeed does not attempt, to promulgate civil or criminal codes, to arrest individuals, or to impose any civil or criminal punishment. As to the checking of immigration status, the Company does this only when an applicant for employment indicates that he or she is not a United States citizen.

Another factor indicative of a company town is a shopping district. In our analysis we compare Prince Crossing's shopping district to that of a municipality of similar size, and not to that of the town in *Marsh*.

Even by this standard, however, Prince Crossing is seriously deficient. The sole commercial establishment at Prince Crossing is a small portion (17′6″ × 8′3″) of a building used by the Company to sell surplus Campbell canned goods at reduced prices to all employees. Not only is this "store" limited in the range of products it sells, but it is opened only one day a week for three hours. The farm has no drug store, dry goods store, clothing store, hardware store, or even a general store stocking the necessities of everyday living. Affidavits of residents indicate that they shop for groceries in West Chicago, St. Charles, and Wheaton, all neighboring towns. Residents also purchase clothing, toiletries, gasoline, and other goods in neighboring towns, where they do their banking, service their cars, and get their hair cut. Prince Crossing has no post office, school, or medical care facility. In short, residents leave the farm frequently, and of necessity, to obtain goods and services typically obtainable in a small town.

IMC argues that the Company provides sewage disposal, garbage collection, and water to the farm.[3] Although these are relevant indicia of a company town, they must be considered along with the numerous other factors important to the determination of the existence of a company town. Having juxtaposed the description of the company town in *Marsh* with that of Prince Crossing, and having analyzed these descriptions in light of the comparative size of the two communities, we hold that Prince Crossing is not a company town under the *Marsh* doctrine, and therefore, that the Company's refusal to grant IMC access to

the farm entails no First or Fourteenth Amendment violation.

IMC argues alternatively that if Prince Crossing is not a company town under *Marsh*, IMC has a First and Fourteenth Amendment right of access based on the reasoning of *Food Employees v. Logan Valley Plaza, Inc., supra,* and *Lloyd Corp. v. Tanner, supra.* The gist of the argument is that in situations in which the private property does not quite meet the requirements of a company town, such as a shopping center, a First and Fourteenth Amendment right of access would arise if the communication is related to the use of the property and no adequate alternative means of communication is available. We need not determine whether the facts in the instant case satisfy this analysis, because we are of the opinion, as we have already indicated, that the recent Supreme Court case, *Hudgens v. N. L. R. B., supra,* rejects this analysis.[4] IMC cites several cases which applied the *Logan Valley* analysis, none of which, however, were decided after *Hudgens. See, e. g., Petersen v. Talisman Sugar Corp.,* 478 F.2d 73 (5th Cir. 1973).

As another alternative means of establishing a right of access, IMC argues that the federal statutory purposes which it is attempting to effect implicitly create a right of access to facilitate its communications with the residents of Prince Crossing. IMC cites in support of its theory 42 U.S.C. § 2861, a provision of the Economic Opportunity Act, which states:

The purpose of this part is to assist migrant and seasonal farmworkers and their families to improve their living con-

**3.** We note, however, that all other private property owners in the unincorporated area of DuPage County in which Prince Crossing is located must provide their own sewage disposal, garbage collection, and water.

**4.** IMC, in its brief argues that five Justices in *Hudgens* upheld the vitality of *Logan Valley.* This is incorrect. Justice Stewart wrote the majority opinion in *Hudgens* in which Justices Blackmun, Rehnquist, Powell, and Burger joined. The majority opinion expressly overruled *Logan Valley.* Justice Powell wrote a concurring opinion joined by Chief Justice

Burger in which he stated that although he joined the opinion of the Court, he was not of the opinion that *Lloyd* overruled *Logan Valley.* IMC apparently concluded from this statement that Powell and Burger did not consider *Logan Valley* overruled. Reading beyond the first sentence of their concurring opinion, however, it is clear that although they did not agree with the majority opinion that *Lloyd* overruled *Logan Valley,* they did agree that *Logan Valley* was no longer good law. This is apparent from their adoption of Justice Black's reading of *Marsh.*

ditions and develop skills necessary for a productive and self-sufficient life in an increasingly complex and technological society[;]

and 29 U.S.C. § 801, a provision of the Comprehensive Employment and Training Programs Act, which provides:

It is the purpose of this chapter to provide job training and employment opportunities for economically disadvantaged, unemployed, and underemployed persons, and to assure that training and other services lead to maximum employment opportunities and enhance self-sufficiency by establishing a flexible and decentralized system of Federal, State, and local programs.

While we agree that private property rights are not absolute, and that they may often have to yield to common law or legislative demands, we find nothing in the statutes cited by IMC or their legislative history that suggests the purposes of the statutes are to be achieved by affording a right of access to private property.[5]

For the reasons stated herein, the judgment of the district court is reversed, the permanent injunction is vacated, and the case is remanded with direction to enter summary judgment for the defendant.

REVERSED AND REMANDED.

SPRECHER, Circuit Judge, concurring.

The district court's conclusion that Prince Crossing is a company town within the meaning of *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) was encouraged by our earlier opinion upon the first appeal of this case, 519 F.2d 391 (7th Cir. 1975), which, in turn, was encouraged by *Food Employees v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). Because *Logan Valley* was "interred" if not overruled by *Hudgens v. N. L. R. B.*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), I must concur in Judge Pell's opinion but if *Hudgens* had not intervened I would take the position Judge

Leighton took in the district court, 438 F.Supp. 222 (N.D.Ill.1977).

---

5. *See, e. g.,* 1973 U.S.Code Cong. & Admin.News, pp. 2948–49; 1964 U.S.Code Cong. & Admin.News, pp. 2923–26.