**CAPE COD NURSING HOME COUNCIL, et al., Plaintiffs, Appellants,**

v.

**RAMBLING ROSE REST HOME, et al., Defendants, Appellees.**

No. 81-1379.

United States Court of Appeals, First Circuit.

Argued Nov. 3, 1981.

Decided Dec. 30, 1981.

---

Natasha C. Lisman, Boston, Mass., with whom Anthony M. Doniger, and Sugarman, Rogers, Barshak & Cohen, Boston, Mass., were on brief, for plaintiffs, appellants.

James B. Krasnoo, Boston, Mass., with whom Mark T. Anastasi, and Norris, Kozodoy & Krasnoo, Boston, Mass., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiffs Cape Cod Nursing Home Council and Legal Services for Cape Cod and Islands, Inc. sought access to defendant Rambling Rose Rest Home ("Rest Home")[1] in order to inform its residents of services provided by the plaintiffs. They were repeatedly denied permission to enter; on one occasion when individual members of the Council did attempt to enter, defendant Marshall Dranetz, co-owner of the Rest Home, called the police and had them arrested and charged with criminal trespass. Plaintiffs brought this action in the district court, asserting a cause of action under 42 U.S.C. § 1983 for the alleged infringement of their first amendment rights, and demanding $1,000,000 in damages. Several pendent state claims were also asserted. The district court dismissed the federal cause of action for failure to state a claim, Fed.R.Civ.P. 12(b)(6), and dismissed the pendent claims as well.

## I.

The district court correctly perceived that the plaintiffs' main stumbling block was the necessity to prove state action. *See, e.g., Civil Rights Cases*, 109 U.S. 3, 3

---

1. It is now undisputed that the Rest Home is not an independent legal entity amenable to suit under the laws of Massachusetts. The suit continues against the individual defendants, which include the owners of the Rest Home.

S.Ct. 18, 27 L.Ed. 835 (1883); *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1947); *see also Columbia Broadcasting System, Inc. v. Democratic National Committee,* 412 U.S. 94, 114, 93 S.Ct. 2080, 2092, 36 L.Ed.2d 772 (1973). Although the Rest Home is licensed and regulated by the Commonwealth of Massachusetts, it is privately owned and operated, and receives no government funds. Plaintiffs therefore eschewed any nexus type of argument premised on the degree of state involvement in a private activity. *See, e.g., Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Rendell-Baker v. Kohn,* 641 F.2d 14 (1st Cir.) *cert. granted,* —— U.S. ——, 102 S.Ct. 385, 70 L.Ed.2d 205 (1981). Instead, they have attempted to characterize the Rest Home as analogous to a "company town" under *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). In *Marsh,* the Supreme Court considered a town which had "all the characteristics of any other American town," except that it was owned by a private corporation. 326 U.S. at 502, 66 S.Ct. at 277. The Court held that the state could not constitutionally punish a person for criminal trespass for distributing religious literature on a company-owned sidewalk, when such punishment would violate the first amendment if applied to a person in a non-privately owned municipality. The district court here ruled that the allegations in the complaint were not sufficient to bring the Rest Home within the company town theory, and we agree.

In reviewing a Rule 12(b)(6) dismissal, we take the allegations in the complaint as true. *E.g., Carr v. Learner,* 547 F.2d 135, 137 (1st Cir. 1976). The sole allegation relevant to state action is the following:

> Rambling Rose Rest Home provides to its residents a place where they live, sleep, get their meals, receive medical attention, and carry out their daily activities, including social, cultural, recreational, and

political activities. Because they are elderly and frequently infirm, most of them seldom leave the rest home so that their contacts with non-residents and exposure to outside sources of information must necessarily take place at the rest home. Their lives are characterized by dependency upon the rest home staff and administration.

Even construed most liberally, we do not see how this allegation is sufficient to bring the *Marsh* doctrine into play. This is so whether we look at *Marsh* itself or later cases that have applied the *Marsh* doctrine to shopping centers and migrant labor camps.[2]

The Rest Home plainly does not meet the criteria for a company town set out in *Marsh.* The Supreme Court identified several characteristics of the company town that made it appropriate to apply the first amendment to it. First, it was structurally and functionally very similar to typical municipalities. It consisted of "residential buildings, streets, a system of sewers, a sewage disposal plant and a 'business block' on which business places are situated." *Marsh v. Alabama, supra,* 326 U.S. at 502, 66 S.Ct. at 277. The facts alleged in the complaint here do not reflect this type of similarity to a typical town.

Another factor identified by the Court in *Marsh* is whether the town is "accessible to and freely used by the public in general."[3] *Marsh v. Alabama, supra,* 326 U.S. at 503, 506, 66 S.Ct. at 277, 278. Nothing alleged here indicates that the Rest Home is freely accessible. Even an expansive reading of *Marsh,* that its "underlying concern ... was that traditional public channels of communication remain free, regardless of the incidence of ownership," *Hudgens v. NLRB,* 424 U.S. 507, 539, 96 S.Ct. 1029, 1045, 47 L.Ed.2d 196 (1976) (Marshall, J., dissenting), is of little comfort to the plaintiffs here. The entrance into a nursing or rest home is hardly a "traditional public channel of communication."

---

**2.** We are not aware of any published decisions addressing the applicability of the *Marsh* doctrine to nursing or rest homes.

**3.** Satisfaction of this test alone is not a sufficient ground for finding state action. *See Central Hardware Co. v. NLRB,* 407 U.S. 539, 547, 92 S.Ct. 2238, 2243, 33 L.Ed.2d 122 (1972).

A final factor which the Court has noted as important to the decision in *Marsh* was that "the owner of the company town was performing the full spectrum of municipal powers and stood in the shoes of the State," *Lloyd Corp. v. Tanner*, 407 U.S. 551, 569, 92 S.Ct. 2219, 2229, 33 L.Ed.2d 131 (1972). Here, there are no allegations concerning the municipal or quasi-governmental powers exercised by the owners of the Rest Home. They are not said to operate utilities or their own police or fire protection services. Nor are they alleged to have authority to develop standards of conduct in the nature of criminal statutes, enforceable by them through appropriate sanctions. Plaintiffs do not allege that the owners of the Rest Home "exercise ... semi-official municipal functions as a delegate of the State," *Lloyd, supra,* 407 U.S. at 569, 92 S.Ct. at 2229. In the absence of facts such as these, the property has not "assume[d] to some significant degree the functional attributes of public property devoted to public use," *Central Hardware Co. v. NLRB*, 407 U.S. 539, 547, 92 S.Ct. 2238, 2243, 33 L.Ed.2d 122 (1972), and thus there is no basis for applying *Marsh* in this case.

The Supreme Court subsequently extended the rationale of *Marsh* to shopping centers, which are often areas of public gathering with some, but by no means all, of the characteristics of a company town. *See Amalgamated Food Employees Union v. Logan Valley Plaza*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). That development was cut short, however, in *Lloyd Corp. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), which, the Supreme Court subsequently explained, in effect overruled *Logan Valley*. *See Hudgens v.*

*NLRB, supra,* 424 U.S. at 518, 96 S.Ct. at 1035. *Lloyd* did leave open the possibility that private property would have to give way to first amendment rights in certain circumstances short of a *Marsh* company town. We turn, then, to an examination of the relevant factors under *Lloyd* and *Hudgens* to determine whether plaintiffs' complaint might state a cause of action even though it does not meet the strict *Marsh* test.

The Court said in *Lloyd,*

> It would be an unwarranted infringement of property rights to require them to yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist.

407 U.S. at 567, 92 S.Ct. at 2228. The court also distinguished *Logan Valley* partly on this ground. *See The Supreme Court—1971 Term*, 86 Harv.L.Rev. 1, 122, 124 (1972). It might be argued, therefore, that *Lloyd* implies some possibility of a first amendment right of access to privately owned property where all other "adequate ... avenues of communication" are barred.[4] Even, however, if such a theory were viable, it would not suffice to sustain the present complaint. There is no allegation that direct, physical access into the Rest Home is the only adequate method of communicating with its residents. While plaintiffs do allege that "most of [the residents] seldom leave the rest home," they do not allege that mail or telephone contact is impossible, or even that interested residents may not arrange with the Rest Home to permit the plaintiffs to enter at a specified time as their personal guests. Massachusetts regulations, in fact, require nursing and rest homes to provide

---

**4.** It has been questioned whether this theory survives after *Hudgens v. NLRB, supra*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196. *See Illinois Migrant Council v. Campbell Soup Co.*, 574 F.2d 374, 378 (7th Cir. 1978). We express no opinion on the matter; we only mention the theory as part of our search for a valid claim raised by the facts alleged. *Cf. O'Brien v. Moriarty*, 489 F.2d 941, 943 (1st Cir. 1974).

Similarly, *Lloyd* could perhaps be read to suggest that the discriminatory denial of access to private property might in some circumstanc-

es be enough to support some sort of state action. 407 U.S. at 567, 92 S.Ct. at 2228. We need not decide upon the viability of this legal theory, because it is not raised by the allegations in the complaint. There is no claim that plaintiffs were discriminatorily denied access that was allowed to others similarly situated.

A final possible theory from *Lloyd*, based on the connection between the property and the content of the communication, has been foreclosed by *Hudgens*, 424 U.S. at 520, 96 S.Ct. at 1036.

flexible visiting hours and insure privacy during telephone conversations and visits. *See* 105 Code Mass.Reg. § 150.012(E).

Our decision is buttressed by circuit court cases dealing with access to privately owned migrant farm labor camps. In *Illinois Migrant Council v. Campbell Soup Co.*, 574 F.2d 374 (1978), the Seventh Circuit noted the limitations imposed by *Lloyd* and *Hudgens*, and considered many of the same factors we mention here. It concluded that the migrant camp did not possess sufficient attributes of a company town to justify a first amendment right of access. The court, in particular, took account of the few quasi-governmental powers asserted by the employer-owner. In *Asociacion de Trabajadores Agricolas v. Green Giant Co.*, 518 F.2d 130 (1975), the Third Circuit held that as the migrant camp was not open to the public, it was outside the concept of a *Marsh* company town. 518 F.2d at 138. Assuming that under *Lloyd* a first amendment right to enter the property might be found if no reasonable substitute means of communication existed, 518 F.2d at 138, the court nonetheless held that plaintiffs had not sustained their burden of proof on this issue. The court characterized the plaintiffs' theory in the following terms:

> Plaintiffs sought relief predicated only on the broad proposition that any person seeking admittance to the Green Giant labor camp for lawful purposes should be granted entrance to the premises to exercise fully rights of association, peaceable assembly and speech . . . .

518 F.2d at 140. This is not unlike the theory of the present plaintiffs. Like the *Green Giant* court, "[u]nder the precedents, we decline to construe the plaintiffs' rights so comprehensively." *Id.*

Indeed, the question of access to nursing and rest homes presents special problems not present in the company town, shopping center, and migrant camp situations. To recognize in outsiders such as plaintiffs a constitutionally guaranteed right of access to a health care facility could threaten patient care and pose significant risks to the elderly residents. *Compare Eastern Maine Medical Center v. NLRB*, 658 F.2d 1 (1st Cir. 1981) (discussing regulation of union solicitation in hospitals). Recognition of such a broad right would create more problems than it would solve, for, once established, it would not only require the court to regulate and monitor access in individual cases by balancing the speech, property, safety, and privacy interests at stake, *see generally The Supreme Court—1971 Term*, 86 Harv.L.Rev. 1, 122, 124 n.15; it would also, by introducing a mandatory component into the calculus, seriously skew the sensitive balancing of all the interests at stake.

In any event, the precedents do not establish any right of access in these circumstances.

## II.

■ Plaintiffs also sought to premise a finding of state action on an alleged conspiracy between the defendants and the police. In support of this claim, they alleged that when certain individual plaintiffs attempted to gain entrance to the Rest Home, defendant Dranetz called the police and had them arrested and charged with criminal trespass. They argue that this action was a conspiracy that constituted state action under *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This claim is without merit.[5]

In *Adickes*, the plaintiff in a section 1983 action had allegedly been arrested on a groundless vagrancy charge as part of a conspiracy between a policeman and an employee of the defendant restaurant. The object of the alleged conspiracy was to deny plaintiff service or to cause her arrest, solely because she was a white person in the company of several blacks. The Court held

---

5. Plaintiffs sought leave to amend their complaint solely in order to more clearly specify the actions they alleged in support of this claim. The district court denied their motion. In light of our ruling here on the merits of the claim, any amendment would be futile, and thus leave to amend was properly denied. *See, e.g., Jackson v. Salon*, 614 F.2d 15, 17 (1st Cir. 1980).

that the involvement of a policeman in such a conspiracy provided sufficient state action for a cause of action under section 1983 for denial of equal protection. The reason for this was that "a State may not discriminate against a person because of his race or the race of his companions, or in any way act to compel or encourage racial segregation." 398 U.S. at 151–52, 90 S.Ct. at 1605.

Here, defendants asked for police assistance in support of what they reasonably—and rightly—believed to be their legitimate property rights. Since the plaintiffs had no right to be on the property, the police action in removing them could not in itself create such a right where none existed before. Plaintiffs are attempting to create a first amendment right of access simply from the police involvement in arresting them. This bootstrap argument would turn any arrest in support of private rights into state action, thereby eviscerating the requirement. *See* Note, *State Action: Theories for Applying Constitutional Restrictions to Private Activity,* 74 Colum.L.Rev. 656, 677 (1974). Whatever the force such arguments might have in the context of race discrimination and equal protection, *see Adickes,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142; *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), they do not serve to create a first amendment right of access where none would otherwise exist. *Cf.* Note, *supra,* 74 Colum.L.Rev. at 680 (even under the *Shelley v. Kraemer* analysis of state action, a "private homeowner should be able to exclude others for whatever reason because his property interest is paramount to those of would-be trespassers").

*Affirmed.*