Jane D. HOYT, next friend and daily visitor to Sharon L. Siebert, Appellant,

v.

ST. MARY'S REHABILITATION CENTER, William Hedrick, M.D., in his capacity as primary physician of Sharon L. Siebert, and Earl and John Bigalke, in their capacities as co-guardians of Sharon Siebert, Appellees.

No. 82–2024.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1983.
Decided July 22, 1983.

Wright, West & Diessner, Robert H. Zalk, Michael Trittipo, Minneapolis, Minn., for Earl and John Bigalke.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, J. Richard Bland, Minneapolis, Minn., for William Hedrick, M.D.

Briggs & Morgan, P.A., John R. Kenefick, Charles B. Rogers, St. Paul, Minn., for St. Mary's Rehabilitation Center.

James P. McCarthy, Minneapolis, Minn., for Jane D. Hoyt; Lindquist & Vennum, Minneapolis, Minn., of counsel.

Before ROSS and ARNOLD, Circuit Judges, and SCHATZ,* District Judge.

ARNOLD, Circuit Judge.

This suit was brought by Jane D. Hoyt as "next friend and daily visitor" to Sharon L. Siebert, a patient at St. Mary's Rehabilitation Center, a nursing home. Siebert, who is 43 years old, suffered brain damage during neurosurgery in Canada in 1976 and has since that time been confined at St. Mary's. Her mental age is two years or less, and she suffers various physical disabilities. In addition to St. Mary's itself, the defendants are William Hedrick, M.D., the physician who has treated Siebert since 1976, and Earl and John Bigalke, Siebert's co-guardians appointed by the Probate Court for Hennepin County, Minnesota. Earl Bigalke is Siebert's father, and John is her first cousin.

Hoyt met Siebert at St. Mary's when Hoyt's mother was a resident there. She began visiting Siebert almost every day on "an unrestricted basis," that is, for one to one and one half hours per day. During these visits, she worked with Siebert to improve Siebert's condition, talking, singing, and playing games with her, helping her to feed herself, and the like. In addition, Hoyt became a dedicated and vigorous advocate on Siebert's behalf. She brought her concerns about the quality of care that Siebert was receiving to the attention of the defendants, the Minnesota Department of Health, and other organizations and officials. She engaged in litigation in the state courts and unsuccessfully attempted to have herself appointed as Siebert's guardian.

On April 16, 1982, Hoyt wrote a letter to Dr. Hedrick, advising him of certain medical conditions from which she believed Siebert to be suffering and which she believed were being treated improperly. Four days later, and, Hoyt alleges, in retaliation for this and her other complaints, Dr. Hedrick ordered that visits to Siebert be kept brief. Since that time, St. Mary's employees have restricted the length of Hoyt's visits, sometimes to as little as fifteen minutes. According to Hoyt, nurses against whom she had filed complaints have curtailed the visits more severely than have other nurses.

In this suit, Hoyt contends that the defendants have violated her and Siebert's constitutional rights to association, due process, and equal protection, and their rights under Section 504 of the Rehabilitation Act of 1973, Pub.L. No. 93–112, 87 Stat. 355, 394 (current version at 29 U.S.C. § 794 (Supp. V 1981)).[1] She seeks injunctive relief to require the defendants to allow her to visit Siebert on an unrestricted basis and to require them to give certain medical and dental care to Siebert that Hoyt thinks she needs. The District Court[2] dismissed the complaint, as if on summary judgment, after considering affidavits tendered by on both sides. We affirm.

I.

We agree with the District Court that there is no state action, so that Hoyt's constitutional and § 1983 claims must fail. Hoyt relies on the "company town" rationale of *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), claiming that St. Mary's is, in effect, Siebert's world. This argument is not illogical, and at least one court has accepted it, *Teitelbaum v. Sorenson*, Civ. No. 79–199 (D.Ariz. Aug. 2, 1979), though the only reported decision in point seems to reject the argument square-

---

* The Hon. Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation.

1. This statute provides in pertinent part:
   No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of

his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

2. The Hon. Diana E. Murphy, United States District Judge for the District of Minnesota.

ly. *Cape Cod Nursing Home Council v. Rambling Rose Rest Home,* 667 F.2d 238, 239–42 (1st Cir.1981). Other courts have found migrant labor camps to be "company towns," so that certain visitors could not be barred. *E.g., Petersen v. Talisman Sugar Corp.,* 478 F.2d 73 (5th Cir.1973). However, the Supreme Court has not extended *Marsh.* See *Hudgens v. NLRB,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976); *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). In a recent case involving a due process challenge to private nursing homes' decisions to discharge or transfer patients, *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), the Court rejected the argument "that the nursing homes perform a function that has been 'traditionally the exclusive prerogative of the State,'" *id.* at 2789 (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 455 (1974)). Indeed, the Court said that even if the State were "responsible for providing every Medicaid patient with nursing home services,"

> it would not follow that decisions made in the day-to-day administration of a nursing home are the kind of decisions traditionally and exclusively made by the sovereign for and on behalf of the public. Indeed, respondents make no such claim, nor could they.

*Id.* at 2789–90. We note also that the Court in *Marsh* stressed that the "town and its shopping district are accessible to and freely used by the public in general," 326 U.S. at 503, 66 S.Ct. at 277, which can hardly be said of a nursing home.

In arguing that the actions of St. Mary's should be subjected to constitutional scrutiny, plaintiff stresses the degree of control over Siebert's life that St. Mary's has. As far as anyone now knows, Siebert will never leave St. Mary's, and it is to her the source of all care and the regulator of all conduct. If logic were the only consideration, *Marsh* might be expanded to fit this case. We are mindful, however, of Judge (as he then was) Cardozo's warning against "[t]he tendency of a principle to expand itself to the limit of its logic," Cardozo, *The Nature of the Judicial Process* 51 (1921). Principles expanded to the limit of their own logic have a way of running into other principles similarly expanded. One of the most important tasks of the law is to draw common-sense lines, to place limits on this process of logical extension. In our view, the present case is an appropriate one for the imposition of such a limit. To hold otherwise would mean that every decision by a privately owned nursing home, and by physicians treating its patients, affecting the care and treatment of long-term patients would be subject to review by the courts under the Fourteenth Amendment and § 1983. The Supreme Court has recently observed "that government offices could not function if every employment decision became a constitutional matter." *Connick v. Myers,* —— U.S. ——, ——, 103 S.Ct. 1684, 1688, 75 L.Ed.2d 708 (1983) (footnote omitted). It is likewise true that nursing homes could not function if every medical decision became a constitutional matter.

Indeed, if the full reach of plaintiff's argument were accepted, every decision of a private individual with a sufficient degree of power in fact over another's life would be "state action" reviewable by the courts, primarily, one suspects, the federal courts, under constitutional standards. We decline to accept such a result. The whole history of Fourteenth Amendment jurisprudence counsels that there is and must be a large area of private action not subject to constitutional challenge. Much of that private action, and nursing homes are surely one of the best examples, is thoroughly regulated by one government or another, so the public is hardly left without legal protection. For much the same reason, we reject Hoyt's argument that the guardians' acquiescence in St. Mary's and Dr. Hedrick's decisions about Siebert's care amounted to state action. If we were to agree with Hoyt, the action of all executors, administrators, guardians, conservators, and trustees appointed by the state courts would be subject to oversight in § 1983 actions. We are aware of no case that has ever so held. Many decisions in our society, right or

wrong, simply must be left to the good judgment and discretion of private individuals, including physicians and other professionals, subject to whatever statutes or regulations may validly be issued by one or another level of government. In short, we agree with the District Court that there is no "state action" in this case.

## II.

We also affirm the dismissal of the § 504 claims. Hoyt, in her own right, raises only one colorable § 504 claim, the claim that the defendants retaliated against her because of her complaints on Siebert's behalf. We agree that retaliation against persons who make complaints under § 504 is actionable, 29 U.S.C. § 794a(a)(2); 45 C.F.R. §§ 84.61, 80.7, but, even after giving her the benefit of all reasonable inferences, Hoyt's complaints cannot reasonably be viewed as relating to § 504. Until this suit was filed, Hoyt never asserted that Siebert was being discriminated against on account of her handicap. Rather, she complained to various individuals and agencies and to the state courts that Siebert was not receiving what Hoyt believed to be adequate medical care. Her theory in this suit is that the defendants retaliated against her, by restricting the length of her visits with Siebert, because of these complaints about the quality of Siebert's care. *E.g.,* Appendix at A–8, A–50, A–73.

Hoyt may in fact believe that her previous protests on Siebert's behalf were claims of discrimination on account of handicap, and that the present alleged retaliation by defendant is based on these protests. This belief on her part, however, is unreasonable as a matter of law. *Cf. Sisco v. J.S. Alberici Construction Co.,* 655 F.2d 146, 150 (8th Cir.1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982) (" 'as long as the employee had a *reasonable* belief that what was being opposed constituted discrimination under Title VII, the claim of retaliation does not hinge upon a showing that the employer was in fact in violation of Title VII.' ") (quoting *Hearth v. Metropolitan Transit Commission,* 436 F.Supp. 685,

688 (D.Minn.1977)) (emphasis added). In substance, this is a medical malpractice case, and it cannot be bootstrapped by a retaliation theory into a case under § 504. *Cf. Monahan v. Nebraska,* 687 F.2d 1164, 1170 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983) ("We do not read § 504 as creating general tort liability for educational malpractice . . . .").

Furthermore, Hoyt lacks standing to assert any rights of Siebert under § 504, because she is not, as a prudential matter, a proper proponent of Siebert's rights. See *Singleton v. Wulff,* 428 U.S. 106, 112–18, 96 S.Ct. 2868, 2873–76, 49 L.Ed.2d 826 (1976) (plurality opinion). She is not related to Siebert, and she is not Siebert's guardian. She does not claim that the guardians are corrupt or incompetent; she simply disagrees with their conduct. Siebert, through her guardians, may assert her own rights, if any, under § 504.

## III.

In her amended complaint, Hoyt also alleged violations of the Minnesota Constitution and various Minnesota statutes. The District Court dismissed these pendent claims on the authority of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), and Hoyt has not appealed that decision. We wish to stress, however, that we construe the dismissal to be without prejudice, leaving Hoyt free to assert her state-law claims in state court. See *Kapaun v. Dziedzic,* 674 F.2d 737, 739 (8th Cir.1982); *Stokes v. Lokken,* 644 F.2d 779, 785 (8th Cir.1981).

Affirmed.