**Richard B. KAY**

v.

**George BRUNO, et al.**

**Civ. No. 84–679–D.**

United States District Court,
D. New Hampshire.

Feb. 26, 1985.

Donald A. Kennedy, Manchester, N.H., for plaintiff.

James R. Muirhead, Manchester, N.H., Robert A. Stein, Concord, N.H., for Bruno.

Kenneth G. Bouchard, Manchester, N.H., for Goble.

Peter W. Heed, Concord, N.H., for Powers.

Michael Lenehan, Concord, N.H., for Raiche.

Michael B. O'Shaughnessy, Manchester, N.H., for Manchester, King and Stewart.

Katherine Hanna, Warren S. Nighswander, Concord, N.H., for N.H. Democratic Party.

## ORDER

DEVINE, Chief Judge.

A Floridian by residence, an attorney by profession, and Democratic in politics, plaintiff Richard B. Kay sought his party's 1984 presidential nomination. In the course of such quest, he attended in October 1983 a New Hampshire political gathering sponsored by Democrats. The events which overtook him in the course of such visit gave birth to the instant litigation.

Named as defendants are the New Hampshire Democratic Party ("Party"), and George Bruno, Ted N. Goble, Stephanie Powers, and Robert E. Raiche, who are described as holding varied positions with respect to the October 1983 meeting.[1] Plaintiff also sues the City of Manchester, a municipal corporation, its Chief of Police, Thomas King, and one of its police sergeants, Robert Stewart. All individual defendants are sued in both their individual and official capacities.

Plaintiff alleges that jurisdiction here exists on federal constitutional violations of Amendments I, V, VI, and XIV; Title 42 U.S.C. §§ 1973, 1981, 1983, and 1985; and Title 28 U.S.C. §§ 1331, 1343. Plaintiff also alleges a cause of action grounded on diversity jurisdiction, 28 U.S.C. § 1332,

---

1. Defendant Bruno is described as the State Chairman of the Democratic Party, defendant Goble as the Chief of Security for the October 1983 meeting, and defendants Powers and Raiche as Co-Chairpersons for said meeting.

claiming damages in excess of $10,000, exclusive of interest and costs.

At this juncture of the proceedings, the issues presented to the Court for resolution arise from motions filed, respectively, by defendants Party, Bruno, Goble, Powers, and Raiche. Such motions seek dismissal pursuant to Rules 12(b) and (c), Fed.R. Civ.P. Their consideration brings into play the well-established and familiar requirement that the material facts alleged in the complaint are to be construed in the light most favorable to plaintiff and taken as admitted, with dismissal to be ordered only if plaintiff is not entitled to relief under any set of facts he could prove. *Chasan v. Village District of Eastman,* 572 F.Supp. 578, 579 (D.N.H.1983), *aff'd without opinion* 745 F.2d 43 (1st Cir.1984) (and cases therein cited). Thus construed, the relevant facts are as follows.

Plaintiff announced his presidential candidacy on September 12, 1983, at the National Press Club in Washington, D.C. He subsequently became aware that New Hampshire Democrats were planning to hold a so-called Mini-Convention on October 29, 1983, at New Hampshire College ("NHC").[2] Plaintiff accordingly sent in the requisite fee for attendance at such meeting and came to New Hampshire on October 28. On the evening of such date he attended a social gathering held in honor of the incumbent Democratic Mayor of Manchester, who was running for reelection. At such gathering, plaintiff was introduced as and given equal attention to that afforded other announced presidential candidates who were then present.

On the morning of October 29, 1983, plaintiff proceeded from his motel to NHC, where he procured his credentials and met with defendant Bruno. Plaintiff informed Bruno of his desire to participate in the presidential candidates' forum which was scheduled to be held that afternoon. Bruno assured plaintiff that plaintiff would in fact be allowed to so participate. After

"working the crowd", i.e., introducing himself to others arriving to participate in the meeting, plaintiff returned to his motel to prepare his remarks for participation in the afternoon forum.

On his return that afternoon to NHC, plaintiff discovered that a table had been set up for prospective participants. in the forum with nameplates thereon. Noticing that his own name was absent, he again sought out Bruno, who then advised him that it had been decided that plaintiff would not be allowed to participate in the candidates' forum.

Unhappy with this turn of events, plaintiff took a seat at the table reserved for such candidates. A person identifying himself as a member of the security force requested plaintiff to leave this position, but plaintiff declined. Defendant Goble then appeared, identified himself to plaintiff as the Chief of Security, and again requested plaintiff to remove himself from the platform. Plaintiff again declined, the police were summoned, and plaintiff was arrested, handcuffed, and removed from the premises of NHC.

At the Manchester Police Station, plaintiff was booked on a charge of criminal trespass and subsequently released on bond. At a subsequent time, defendant King caused his offense to be reduced to a charge of "disorderly conduct". Trial on this latter charge was held in the month of November 1983 and resulted in plaintiff's acquittal.

■ Plaintiff alleges the acts of the defendants in "disinviting" him from participation in the candidates' forum were motivated by his known opposition to the position of most of the other candidates on the issue of "gay rights". His ten-page, 55-paragraph complaint sets forth three causes of action: (1) violation of his constitutional rights; (2) false arrest and false im-

---

**2.** New Hampshire College is a private college offering a variety of courses leading to Associate and Bachelor's Degrees. It operates from two geographically separated campuses situated in the northern outskirts of Manchester, the largest city in the state of New Hampshire.

prisonment; and (3) malicious prosecution. The Court discusses these claims seriatim.[3]

### 1. The Constitutional Claims

Plaintiff alleges that Party and the individual nonmunicipal employee defendants individually and in conspiracy with the police sought to injure him and deny him his constitutional rights of free speech and association pursuant to the First Amendment. Specifically, plaintiff alleges that the "Mini-Convention" was an official Democratic Party function in which plaintiff had been assigned a place as a forum participant and that denial of his participation therein deprived him of such constitutional rights. Plaintiff alleges that such actions of the defendants were under color of state law.

Otherwise stated, plaintiff's basic constitutional claim is that by "disinviting" his participation in the forum defendants violated his civil rights in derogation of the provisions of 42 U.S.C. § 1983 and the Fourteenth Amendment.[4] Title 42 U.S.C. § 1983 does not reach private action, but rather "prohibits interference with federal rights under color of state law". *Rendell-Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982). The identical issues in determining the viability of suits under either § 1983 or the Fourteenth Amendment is whether "the alleged infringement of federal rights [may be] 'fairly attributable to the State' ". *Id.* at 838, 102 S.Ct. at 2770, *quoting Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). "The 'state action' determination requires a fact-dependent inquiry into the degree of state control and involvement." *Mendez v. Belton,* 739 F.2d 15, 17 (1st Cir.1984). We commence such inquiry with a brief outline of New Hampshire's legislative approach to presidential primaries.

For most legislative purposes, the term "party" is defined to "mean any political organization which at the preceding state general election received at least 3 percent of the total number of votes cast for the office of governor". New Hampshire Revised Statutes Annotated ("RSA") 652:11 (Supp.1983).[5] Since inception in 1949, the "first-in-nation" status of New Hampshire's presidential primary has been jealously guarded. RSA 653:9 (Supp.1983).[6] Its purpose is the election of "delegates to a national party convention", RSA 652:6 (Supp.1983), such delegates being chosen by the voting of preference for presidential candidates. RSA 653:5 (Supp.1983).

In addition to the method of selection of national convention delegates, the New Hampshire statutes provide for the selection of delegates to state party conventions

---

**3.** Before addressing plaintiff's claims in the context of the pending motions, the Court disposes of the claim of defendant Party that all actions against it should be disposed of because it is not a properly named legal party. In federal courts, an "unincorporated association ... may be sued in its common name for the purpose of enforcing ... against it a substantive right existing under the Constitution or laws of the United States". Rule 17(b), Fed.R.Civ.P. The Court finds that the common understanding of most citizens of New Hampshire is that there is in existence a New Hampshire Democratic Party, commonly referred to and contributed to as such, which meets regularly in convention. There is therefore no merit to the claim that Party is not here a proper defendant. *See Ripon Society v. National Republican Party,* 525 F.2d 567, 571–72 n. 5 (D.C.Cir.1975) (en banc), *cert. denied,* 424 U.S. 933, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976).

**4.** As hereinabove indicated, plaintiff also claims deprivation of rights pursuant to the federal "Voting Rights" Act, 42 U.S.C. § 1973 et seq., as well as violation of his rights under other provisions of the Civil Rights Acts as detailed in 42 U.S.C. §§ 1981 and 1985. These additional claims will be later discussed in the course of the Order.

**5.** The exception is found in RSA 664 (Supp. 1983), which governs "political expenditures" and "contributions". Section 2 of RSA 664 specifically holds that the definition of "party" in 652:11 is not applicable in such context, and defines "party" to mean "any political organization or number of persons which can nominate candidates in any manner prescribed by law and has done so for the current election".

**6.** RSA 653:9 (Supp.1983) provides for holding of the presidential primary election on the second Tuesday in March "or on the Tuesday immediately preceding the date on which any other state shall hold a similar election, whichever is earlier".

"in accordance with" certain geographical districts. RSA 653:6 (Supp.1983). A state party convention must be convened by the chairman of a state party committee, following the primary, and is to be held between the third Tuesday of September and the first Tuesday of October. RSA 667:21 (Supp.1983). Party nominees for certain state offices and delegates elected to attend the convention are to meet thereafter "for the purpose of adopting the platform of their party, nominating presidential electors and effecting an organization for the following 2 years." *Id.* Only such nominees or state delegates may participate in such state convention. RSA 667:23 (Supp.1983).

From the foregoing description, it is clear that the gathering at New Hampshire College on October 29, 1983, was not a statutorily mandated convention of the state Democratic Party. Rather, it was a gathering of those interested in the ideas of the Democratic Party, to which meeting were admitted all those who were able to pay the requested fee for such entry. Nor was the rental of a building at NHC, a private college, for the purpose of such meeting equivalent to the establishment of a public forum. *Contrast Widmar v. Vincent,* 454 U.S. 263, 267–68 n. 5, 102 S.Ct. 269, 273 n. 5, 70 L.Ed.2d 440 (1981) (while a state university which allows students to meet on its premises thus creates a public forum, there is no constitutional basis for a holding that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings).[7]

Without pun intended, it is also clear that the final ballots are not yet counted on the issue of whether political candidacy comprises a "fundamental right". *Compare plurality opinion Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (per Rehnquist, J.) *with dissent in same case, id.* at 977 n. 2, 102 S.Ct. at 2849 n. 2 (per Brennan, J.). But the instant case does not concern itself with any restriction by either government or private entities of access to the ballot. The issue here is the plaintiff's right to insist that his declaration of candidacy entitled him under the First Amendment to participation in a candidates' forum, access to which had been specifically withdrawn from him.

■ It is to be remembered that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any conceivable manner. *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981); *Greer v. Spock,* 424 U.S. 828, 836, 96 S.Ct. 1211, 1216, 47 L.Ed.2d 505 (1976); *Adderley v. Florida,* 385 U.S. 39, 47–48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966), *reh'g denied,* 385 U.S. 1020, 87 S.Ct. 698, 17 L.Ed.2d 559 (1967). As made applicable to the states by the Fourteenth Amendment, its command forbids interference by state *governments* with its principles. *Hovan v. United Brotherhood of Carpenters and Joiners,* 704 F.2d 641, 642 (1st Cir.1983).

■ It is also to be noted that political parties hold the strong and time-honored rights of free speech and association, and that interference with such freedoms is simultaneously an interference with the freedom of the party's adherents. *Cousins v. Wigoda,* 419 U.S. 477, 487–88, 95 S.Ct. 541, 547, 42 L.Ed.2d 595 (1975). This freedom to associate for the common advancement of political beliefs necessarily presupposes the freedom to identify the people who constitute the association and to limit the association to those people only. *Democratic Party of United States v. Wisconsin,* 450 U.S. 107, 122, 101 S.Ct. 1010, 1019,

---

7. Indeed, in passing the Court notes that plaintiff has attached to his legal memo a copy of what purports to be a contemporaneous news description of the events which took place at NHC on October 29, 1983. In addition to the description of what occurred with respect to plaintiff, there is a reference therein to a complaint of the NHC student government president, a Republican in politics, that use of the NHC building by the Democrats is to be equated with a denial of access "to our own campus".

67 L.Ed.2d 82 (1981). Courts are thus well advised to move with caution before interfering with a party determination as to the choice of speakers who are to address any of its meetings. *See Wymbs v. Republican State Executive Committee of Florida,* 719 F.2d 1072 (11th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984).

In short, there is here, taking the facts as pled most favorably to the plaintiff, insufficient evidence to demonstrate that the actions of the moving defendants were taken under color of state law. The evidence does not support a claim that a nexus existed between any involvement of the state in a private activity or a showing that the rented premises at NHC comprised a limited public forum sufficient to require that plaintiff be granted freedom to speak at the defendant's forum. Nor is there any indication that denial of his right to do so barred him from other adequate avenues of communication, for he certainly could have sought from others in attendance in the audience action seeking to overrule the denial of his request to participate in the forum. *See Cape Cod Nursing Home v. Rambling Rose Rest Home,* 667 F.2d 238, 239–41 (1st Cir.1981). While the actions of the defendants in "disinviting" plaintiff's participation in the forum might be considered by some to be either uncivil or discourteous, the law affords no damage remedy for the breach of good manners. There is accordingly no basis pursuant to 42 U.S.C. § 1983 on which plaintiff can recover against the moving party defendants.

It is similarly obvious that the Voting Rights Act, 42 U.S.C. § 1973 et seq., is not applicable, for there is no evidence of denial of the ballot on a discriminatory basis. And as there is no evidence of purposeful discrimination on the basis of race, 42 U.S.C. § 1981 is similarly not applicable. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

And while 42 U.S.C. § 1985 clearly provides a civil remedy for both public and private infringements of constitutionally protected rights, *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), it is limited in application to cases where the plaintiff is deprived of a constitutionally protected right or privilege and where such deprivation is based upon "some racial, or perhaps otherwise class-based invidiously discriminatory animus". *Id.* at 102, 91 S.Ct. at 1798. Such being here absent, plaintiff fails to state a claim under 42 U.S.C. § 1985.

Accordingly, for the reasons hereinabove stated, the Court finds and rules that plaintiff has no cause of action for violation of any constitutional rights as against the moving party defendants, and their motions to dismiss must therefore be granted with respect to such claims.

*2. False Arrest and False Imprisonment*

Plaintiff's own complaint admits that on two separate occasions he was asked by representatives of the defendants' security forces to leave the forum platform, and that in each such instance he declined. Clearly, therefore, the defendants were within their rights to summon law enforcement officials to remove him from the platform. Probable cause to arrest exists when facts and circumstances within the knowledge of the person causing the arrest and of which such person has reasonably trustworthy information are sufficient to warrant a man of reasonable caution and prudence in the belief that the defendant is committing or has committed an offense. *State v. Lemire,* 121 N.H. 1, 4, 5, 424 A.2d 1135, 1138 (1981). Probable cause and "reasonable ground" [8] are synonymous, and determination of the existence of probable cause requires only a showing of reasonable probabilities, as proof beyond a reasonable doubt is not required. *State*

---

**8.** RSA 594:10 I permits arrest without warrant on a charge of misdemeanor whenever the officer "has reasonable ground to believe" that the arrestee has committed the misdemeanor in the presence of the officer.

*v. Reynolds,* 122 N.H. 1161, 1163, 453 A.2d 1319, 1320 (1982).

 False imprisonment is the unlawful restraint of an individual's personal freedom, *Welch v. Bergeron,* 115 N.H. 179, 181, 337 A.2d 341, 343 (1975), an essential element of which is the absence of valid legal authority for the restraint imposed. *Id.* As it is here clear that the evidence with respect to the moving party defendants actually supports the validity of plaintiff's arrest and subsequent removal to the police station, it is clear that he asserts against them no valid constitutional or tort claim for either false arrest or imprisonment.[9]

### 3. Malicious Prosecution

 The disorderly conduct charge on which plaintiff's prosecution was grounded came into existence as a result of subsequent action on the part of defendant King. A successful action for malicious prosecution requires proof that plaintiff was subjected to a criminal prosecution instituted by the defendant without probable cause and with malice, and that the criminal proceeding terminated in his favor. *Johnston v. Flatley Realty Investors,* 125 N.H. 133, 480 A.2d 55, 57 (1984); *Hogan v. Robert H. Irwin Motors, Inc.,* 121 N.H. 737, 739, 433 A.2d 1322, 1324 (1981); *Stock v. Byers,* 120 N.H. 844, 846, 424 A.2d 1122, 1123 (1980). The existence of probable cause is a question of law for the Court when, as here, the facts are taken as established, *Hogan, supra* at 740, 433 A.2d 1325; *Stock, supra* at 847, 424 A.2d at 1124. And the absence of probable cause cannot be inferred from even express malice for

> [i]f the defendant had such information as would reasonably lead him to believe that the accused had committed a crime, it is immaterial that the defendant may have been actuated by malice or by motives that were less than noble in bringing the charge.

*Stock, supra,* 120 N.H. at 848, 424 A.2d at 1124 (citations omitted).

Here, the plaintiff's factual evidence with respect to malicious prosecution, as with respect to his claims for false arrest and false imprisonment, fall short of the proof required to sustain such actions, either in the constitutional rights context or in the state tort law context.

### 4. Conclusion

The facts in the instant action are quite similar on their face to those presented the court in *McIntosh v. White,* 582 F.Supp. 1244 (E.D.Ark.1984). In that case plaintiff, a black citizen, opposed to the policies of the incumbent governor, purchased for cash a ticket to a fundraising luncheon designed to aid such governor's campaign for reelection. Plaintiff then advised the governor in writing that plaintiff intended to speak at the luncheon. As the Vice President of the United States was the featured guest speaker, plaintiff inquired of the governor in such correspondence as to whether he should speak before or after the Vice President.

The Secret Service, concerned with security problems, met and conferred with plaintiff and secured an agreement from him that he would not approach the head table where the Vice President would be seated and would not interfere with the latter's speech. As the result of such meeting with plaintiff, the Secret Service was of the impression that he planned to speak at the meeting from his seat in the audience.

On the day of the luncheon, plaintiff arrived at the door with his ticket, but was there met by the chairman of the luncheon, who was accompanied by state police officers. He was advised that his purchase of a ticket for cash was in violation of a state fair political practices act, and therefore he would be given a refund but would not be allowed to enter the hall. Repeated suggestions that he accept a refund were re-

---

**9.** Plaintiff is not saved by his vague allegations of "conspiracy" between the moving party defendants and the police. This Circuit requires more specificity as to facts underlying such claims in cases of this nature. *Glaros v. Perse,* 628 F.2d 679, 685 (1st Cir.1980). As an attorney, plaintiff should be able to supply the Court with such pleading.

fused by plaintiff, who insisted on entry, and the police then advised plaintiff that he could not enter this private function and that his ticket was not valid. When plaintiff refused to leave, he was arrested and subsequently .tried and acquitted on a charge of disorderly conduct. There, as here, the court found that plaintiff stated no cause of action either for violation of his constitutional rights or under the tort law claims for false arrest or malicious prosecution.

In short, the Court here finds and rules that plaintiff possessed no legal right to insist that he be granted the right to speak at the forum on October 29, 1983. When he persisted in his refusal to withdraw from the platform from which the speakers were to address the audience, the moving defendants herein were within their rights to seek that he be removed therefrom so that the gathering could go about its business. Relevant to the instant action is the following language from the First Circuit.

Here, defendants asked for police assistance in support of what they reasonably—and rightly—believed to be their legitimate property rights. Since the plaintiffs had no right to be on the property, the police action in removing them could not in itself create such a right where none existed before. Plaintiffs are attempting to create a first amendment right of access simply from the police involvement in arresting them. This bootstrap argument would turn any arrest in support of private rights into state action, thereby eviscerating the requirement. *See* Note, *State Action: Theories for Applying Constitutional Restrictions to Private Activity*, 74 Colum.L.Rev. 656, 677 (1974). Whatever the force such arguments might have in the context of race discrimination and equal protection, *see Adickes*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142; *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), they do not serve to create a first amendment right of access where none would otherwise exist. *Cf.* Note, *supra*, 74 Colum.L.Rev. at 680 (even under the *Shelley v. Kraemer*

analysis of state action, a 'private homeowner should be able to exclude others for whatever reason because his property interest is paramount to those of would-be trespassers').

*Cape Code Nursing Home v. Rambling Rose Rest Home, supra*, 667 F.2d at 243.

For the reasons hereinabove detailed, the motions of the defendants Party, Bruno, Gobel, Powers, and Raiche seeking dismissal of the instant actions must be and they are herewith granted.

SO ORDERED.