White v. Union Leader Corp.          CV-00-122-B    07/13/01

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Stacey White</u>

    v.                                    Civil No. 00-122-B
                                              Opinion No. 2001 DNH 127
<u>Union Leader Corporation, et al.</u>


### MEMORANDUM AND ORDER


Stacey White <u>pro</u> <u>se</u> brings this action against two members

of the Manchester, New Hampshire Police Department, Charles

Anderson and Keith Chandonnet, alleging that they violated her

First Amendment rights by preventing her from distributing a

newsletter.[1]  I have before me Anderson and Chandonnet's motion

for summary judgment, (Doc. No. 24).  For the reasons discussed

herein, I grant their motion.

---

[1]  White also asserts claims against the Union Leader
Corporation ("Union Leader"), four employees of Union Leader, and
Union Leader's attorneys.  I dismissed the federal claims against
these defendants in a separate Memorandum and Order.

## I. **BACKGROUND**[2]

Stacey White worked as a newspaper carrier for Union Leader, the publisher of The Union Leader and New Hampshire Sunday News, from September 29, 1997 until her contract was terminated on December 27, 1998.

In October 1999, White created a newsletter for newspaper carriers called The Carrier Times. In the early morning hours of October 2, 1999, White went to a parking lot in Manchester, New Hampshire where Union Leader drops off and distributes newspapers to its carriers. When Union Leader leaves its newspapers at the drop-off site, they are tied up in bundles. On top of, and attached to, each bundle is a sheaf of administrative paperwork, including memoranda from Union Leader to the carriers.

When White arrived at the drop-off site, she began placing her newsletter in with the carriers' paperwork. Donald Groulx, a Union Leader employee, promptly began harassing White and removing her newsletter from the bundles. White then went into a pharmacy adjacent to the parking lot and asked Patricia Hubert, a

---

[2] I describe the background facts in the light most favorable to White, the nonmoving party. I set forth only those facts that are relevant to the instant motion.

pharmacy employee, to call the police, claiming that Groulx was harassing her and stealing her newsletters.

A number of police officers, including Officers Anderson and Chandonnet, arrived at the parking lot shortly thereafter. When White attempted to explain the situation to them, they became annoyed and told her that she did not have the right to place her newsletters in with the newspapers.

A superior officer, Sergeant Mosley, soon arrived on the scene. Mosley told White that she had the right to distribute her newsletter to the carriers by hand, but that she did not have the right to place her newsletter in with the bundled newspapers without Union Leader's permission. Groulx, however, apparently had told some of the officers that White was violating a court order by distributing her newsletter. Some of the officers approached White to discuss the matter. In the interim, Groulx continued to take the newsletters out of the bundles and away from the newspaper carriers who had begun to arrive.

After White informed the officers that no court order existed, they retrieved the newsletters from Groulx and gave them back to White. White then waited to see if any more carriers would arrive.

While White was waiting, Officer Chandonnet asked her whether she was going to leave the drop-off site. She replied that Sergeant Mosley had told her that she could remain and distribute her newsletter by hand and that she would continue to do so.

Officer Chandonnet asked Hubert whether the pharmacy would allow White to remain in the parking lot. She said that White could stay. Chandonnet then entered the pharmacy to determine whether Hubert's manager was willing to allow White to continue distributing her newsletter in the parking lot. Shortly thereafter, White went inside as well, concerned that Chandonnet might try to convince the pharmacy manager to have White removed. When White asked Chandonnet about his intentions, Chandonnet yelled at her, saying that he was speaking with the manager, not with her. When she persisted, he asked her if she wanted to go to jail and guided her out of the pharmacy. Eventually, the officers told White that she had the manager's permission to remain in the parking lot.

White complained to the police department about Chandonnet's behavior. She received no response to her complaint. White initiated this litigation on March 17, 2000.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94-95 (1st Cir. 1996).  A material fact is one "that might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena, 95

-5-

F.3d at 94 (citing <u>Celotex</u>, 477 U.S. at 323; <u>Anderson</u>, 477 U.S. at 249).

Although <u>pro</u> <u>se</u> litigants are generally held to a less stringent standard than lawyers, <u>pro</u> <u>se</u> status "does not free a litigant in a civil case of the obligation to comply with" the Federal Rules of Civil Procedure. <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28 n.2 (1st Cir. 2000).

I apply this standard in reviewing defendants' motion for summary judgment.

### III. <u>DISCUSSION</u>

White asserts claims under 42 U.S.C. § 1983 against Officers Anderson and Chandonnet. She claims that Anderson and Chandonnet, while acting under color of state law, violated her rights under the First Amendment to the Constitution by interfering with her attempts to distribute her newsletter to the Union Leader's newspaper carriers.[3] <u>See</u> Pl.'s First Amended Complaint ("Cplt."), (Doc. No. 6), ¶¶ 154-203, 474-89.

---

[3] White also claims that defendants violated her rights under the New Hampshire Constitution, Part 1, Article 22. I decline to reach the merits of this claim and instead, dismiss the claim without prejudice.

Specifically, White alleges that the defendants:  (1) failed to prevent Groulx from interfering with her attempts to place her newsletter in the newspaper bundles; (2) told her that she could not place her newsletter in the bundles; (3) failed to prevent Groulx from interfering with her attempts to distribute her newsletter to the carriers by hand; and (4) attempted to persuade her to leave the newspaper drop-off area.  See id.; Pl.'s Opposition to Defs.' Mot. for Summ. J., (Doc. No. 27), 3. Anderson and Chandonnet move for summary judgment on the grounds that they are entitled to qualified immunity.[4]

---

[4]  Anderson and Chandonnet offered affidavits in support of their summary judgment motion.  White moves to strike portions of those affidavits, (Doc. No. 33), on the grounds that they contain legal conclusions and opinions.  Because these affidavits satisfy the requirements of Federal Rule of Civil Procedure 56(e), I deny her motion to strike.

In her opposition to the defendants' motion for summary judgment, (Doc. No. 27), White relied solely on the allegations in her amended complaint.  Defendants then filed a partially-assented-to motion for leave to file a reply to White's opposition, (Doc. No. 28), in which they argued that the "court must disregard any factual assertions in [White's] objection because she has not attached a counter affidavit or referenced a verified pleading."  In response, White filed an objection to the defendants' motion for leave to reply, (Doc. No. 29).  Appended to that objection are affidavits of White ("White Aff.") and Patrcia Hubert ("Hubert Aff.").  The defendants move to strike these affidavits, (Doc. No. 30), because they were filed after the response deadline.  Given White's pro se status, I deny the defendants' motion to strike these affidavits.

Before addressing the issue of qualified immunity, I must first determine whether White has "introduced sufficient evidence to create a genuine issue of material fact that" Anderson and Chandonnet violated White's constitutional rights. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994); see Souza v. Pina, 53 F.3d 423, 425 (1st Cir. 1995).

In order to prevail on her claims, White must establish that: (1) she had a First Amendment right; (2) defendants acted with the intent to prevent her from exercising that right; (3) defendants did, in fact, prevent or intimidate her from exercising that right; and (4) defendants acted under color of state law. See Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir. 1994) (establishing the motive requirement for a First Amendment claim against a police officer); Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989) (discussing the First Amendment causation requirement). I address her claims in turn.

## A.  The "Bundle" Claims

White's first two claims depend, in the first instance, on whether she had a First Amendment right to insert her newsletter into the administrative paperwork that was on top of the bundled newspapers.

The distribution of newsletters, handbills, and leaflets in a public place is "an activity that long has enjoyed the full protection of the First Amendment." Jews for Jesus, Inc. v. Mass. Bay Transp. Auth., 984 F.2d 1319, 1324 (1st Cir. 1993) (citing Lovell v. City of Griffin, 303 U.S. 444, 450-52 (1938)); see Schenck v. Pro-Choice Network of Western New York, 519 U.S. 357, 377 (1997) ("Leafletting and commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment."); United States v. Grace, 461 U.S. 171, 176-77 (1983) ("There is no doubt that as a general matter peaceful picketing and leafleting are . . . protected by the First Amendment."). However, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981). Thus, as a general matter, a person has no First Amendment right to communicate her views on another person's private property without their consent. See, e.g., Lloyd Corp. v. Tanner, 407 U.S. 551, 568 (1972) ("this Court has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used

nondiscriminatorily for private purposes only"); <u>Kay v. New Hampshire Democratic Party</u>, 821 F.2d 31, 33-34 (1st Cir. 1987) (per curiam) (holding that plaintiff had no right to speak at private political forum); <u>Cape Cod Nursing Home Council v. Rambling Rose Rest Home</u>, 667 F.2d 238, 243 (1st Cir. 1981) (holding that plaintiff had no right to speak at private nursing home).

In this case, White does not contend that she had any property interest in either the newspapers or the documents that were attached to them. <u>See, e.g.</u>, White Aff. ¶ 1 (stating that she placed the newsletters "with other memos and communications intended for the newspaper carriers attached to the bundles of newspapers"); Cplt. ¶¶ 155 (alleging that she attempted to place her newsletter "with the carriers' paperwork attached to the newspapers"), 169 (alleging that the newspapers belonged to the carriers), 173 (alleging that Groulx said that the newspapers did not belong to Union Leader). Neither does she claim that she had the permission of the carriers or Union Leader to place her newsletter inside those attached documents. Therefore, I conclude she had no First Amendment right to do so. <u>See</u> <u>Tanner</u>, 407 U.S. at 568; <u>Kay</u>, 821 F.2d at 33-34; <u>Cape Cod Nursing Home</u>

-10-

<u>Council</u>, 667 F.2d at 243.

Because White did not have a First Amendment right to place her newsletters inside the documents, defendants' actions cannot give rise to a Section 1983 claim based upon the First Amendment. See <u>Kay</u>, 821 F.2d at 33-34; <u>Cape Cod Nursing Home Council</u>, 667 F.2d at 243. Therefore, I grant defendants' motion for summary judgment as to White's first two claims.

## B. <u>The Leafletting Claims</u>

White next argues that defendants interfered with her right to distribute her newsletter by: (1) refusing to prevent Groulx from harassing her and taking her newsletter; and (2) attempting to persuade her to leave the newspaper drop-off area. She fails, however, to introduce "sufficient evidence to create a genuine issue of material fact that" Anderson and Chandonnet violated her constitutional rights. <u>Febus-Rodriguez</u>, 14 F.3d at 91.

As to her first claim, White acknowledges that once the defendants had interviewed her and Groulx, and after she informed them that there was no court order which prevented her from distributing her newsletter to the carriers, the defendants retrieved the newsletters from Groulx and told her that she could continue to distribute them by hand. White Aff. ¶¶ 14-16.

-11-

Although White characterizes the defendants' attempts to investigate the situation and ascertain the parties' rights as "inaction," she offers no evidence to suggest that the defendants were motivated by a desire to chill her right to distribute her newsletter. See Tatro, 41 F.3d at 18 (holding that a plaintiff must "show that the officer's intent or desire to curb the [plaintiff's] expression was the determining or motivating factor"). Accordingly, I grant the defendants' motion for summary judgment as to this claim.

White's final claim is based on the events that occurred after the defendants returned the newsletters to her and told her that she could distribute them by hand. Many carriers had come and gone by this point, but White waited to see if any more would arrive. White Aff. ¶¶ 16, 27-28; Hubert Aff. ¶ 27. She offers no evidence to suggest that any more carriers, or anyone else for that matter, arrived at the drop-off site. Nor does she offer any evidence to suggest that she attempted to distribute her newsletter to anyone. In addition, I note that the bulk of Officer Chandonnet's allegedly rude behavior occurred after she followed him into the pharmacy of her own accord and interrupted his conversation with the pharmacy manager.

-12-

White has failed to come forward with evidence that would suggest that the defendants' actions prevented or intimidated her from distributing her newsletter by hand or that the defendants were motivated by an intent to do so.  See Tatro, 41 F.3d at 18; Sullivan, 888 F.2d at 4 (holding that in order to prove a First Amendment violation, the plaintiff must show that her "speech was in fact chilled or intimidated . . . Absent such an allegation, no violation occurred . . . Where a chilling effect is speculative, indirect or too remote, finding an abridgement of First Amendment rights is unfounded").  Therefore, I grant the defendants' motion for summary judgment with regard to this claim.

## IV.  <u>CONCLUSION</u>

For the reasons discussed herein, I deny White's motion to strike portions of the defendants' affidavits, (Doc. No. 33), and I deny the defendants' motion to strike White's affidavits, (Doc. No. 30).  I grant the defendants' motion for summary judgment, (Doc. No. 24), as to the federal claims asserted against them.

The only claims that remain pending in this case are claims based upon state law.  Rather than attempt to assess the merits

of these claims, I decline to exercise supplemental jurisdiction over them and, instead, dismiss these claims without prejudice to White's right to pursue the claims in state court. I direct the Clerk to enter judgment accordingly.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

July      , 2001

cc:   Stacey White, pro se
      Donald A. Kennedy, Esq.
      Richard B. McNamara, Esq.
      Michael O'Shaughnessy, Esq.